UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sandra H. Harp,                                                    Civil No. 10-3970 (PJS/FLN)

                Plaintiff,

      v.                                                    **REPORT AND RECOMMENDATION**

Navarre Logistical Services, Inc.,
David Ginsberg, Margot McManus,
and Micki St. Clair,

                Defendants.

___

Sandra H. Harp, *pro se.*
Jessica Roe for Defendants.

___

**THIS MATTER** came before the undersigned United States Magistrate Judge on December 13, 2012 on Defendants' motion for summary judgment (ECF No. 54). The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, this Court recommends the motion be **GRANTED**.

### I. BACKGROUND

Sandra Harp, a middle-aged African American woman, was hired as a second-shift supervisor by Navarre Logistical Services in 2000. McMann Aff. ¶ 2. ECF No. 59. Eight years later, Navarre contends it terminated Harp for leaving work early on Friday, August 1, 2008 and not working mandatory overtime the following day, Saturday, August 2.[1] *Id.* at ¶ 23. Harp alleges that she was terminated because of her race, in violation of Title VII of the Civil Rights Act of 1964,

---

[1] Navarre's 2008 Employee Handbook indicates that all employees must call their supervisor and attempt to speak with them directly when they anticipate missing work. The Handbook specifies that even one "no call/ no show" instance is grounds for termination. Roe Fourth Decl. 45, ECF No. 57.

U.S.C. § 2000e. ECF No. 1. After exhausting her administrative remedies with the Minnesota Department of Human Rights, Harp sued Navarre and, as agents for the company, David Ginsberg, Margot McManus, and Micki St. Clair. *Id.*

Harp was hired in 2000 by McManus, Navarre's Vice President of Human Resources. McManus Aff. ¶ 1, ECF No. 59. Ginsberg, the Vice President of Operations, recommended Harp's hire based on his experience working with her at a different company. Gins. Aff. ¶ 2, ECF No. 58. St. Clair served as Harp's immediate supervisor at the time she was terminated.[2] Clair Aff. ¶ 1, ECF No. 60. Throughout her tenure at Navarre, Harp received raises, training, and performance reviews. McManus Aff. ¶ 5, ECF No. 59. Harp's performance reviews were largely positive. However, around 2004, some issues with Harp's managerial decisions arose. *Id.* Specifically, it was observed that Harp was granting simultaneous leave to multiple employees, which resulted in "job flow and productivity" issues. Between 2004 and 2008 Harp received approximately six warnings related to the inadequacy of her performance. McManus Aff. ¶¶ 5-8, 14-16, ECF No. 59. The last such warning was a written "Lapse of Supervision" reprimand that indicated "lack of immediate improvement may lead to further disciplinary action up to and including termination." Gins. Aff. ¶ 6, ECF No. 58.

In July 2008, Navarre began the process of implementing a new computer system for the warehouse. Clair Aff. ¶ 2, ECF No. 60. The "Go-Live" date was pending for some time. Still, Navarre informed all employees that they would be required to work on the date(s) that the system went live. *Id.* at ¶ 4. Sometime before the Go-Live date was set, Harp requested a half-day of leave

---

[2] At the hearing, counsel for Defendants indicated that St. Clair was also fired after Harp's termination.

on Friday, August 1, 2008 and a full day of leave on Saturday August, 2. *Id.* at ¶ 3. According to Harp, she was granted leave for this time from her supervisor, St. Clair. Harp Sec. Decl. ¶ 26, ECF No. 66. Subsequently, Navarre set the Go-Live date for July 29 and declared the first weekend in August as a mandatory overtime period. McManus Aff. ¶ 17, ECF No. 59. Harp left work a few hours early on August 1, and did not attend work on Saturday, August 2. *Id.* at 18; Harp Sec. Decl. ¶ 27, ECF No. 66.

The following Monday, Ginsberg was informed of Harp's absence during the mandatory Go-Live period. Gins. Aff. ¶ 7, ECF No. 58. After a brief investigation, Ginsberg concluded that Harp was not granted leave for the Go-Live dates and she was fired. *Id.* at 9. St. Clair claimed that if she did approve Harp's leave request, it was conditional on those dates not coinciding with the Go-Live period. Clair Aff. ¶ 3, ECF No. 60. There is no written record of Harp's leave request.

## II. LEGAL ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences drawn from it should be made in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 255 (1986).

B.  *McDonnell Douglas* **burden-shifting framework.**

This is a disparate-treatment case in which the ultimate question is whether or not Harp's termination was motivated by intentional racial discrimination.[3] *See Reeves v. Sanderson Plumbing Prods.,Inc.*, 530 U.S. 133, 153 (2000). A plaintiff alleging discrimination based on her race may survive summary judgment by either producing direct evidence of discrimination or establishing an inference of discrimination under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Harp has not produced any direct evidence of discrimination, so the *McDonnell Douglas* framework applies.

Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. *Id.* When a plaintiff alleges that she was terminated unlawfully, the burden is on her to show that she: (1) is a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for the position; and that (4) the circumstances give rise to an inference of discrimination (*i.e.* similarly situated employees outside of the protected class were treated differently). *E.g. St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 503, 506 (1993); *Arnold v. Nursing & Rehab. Ctr. at Good Shepherd, LLC*, 471 F.3d 843, 846 (8th Cir. 2006). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the plaintiff's termination. *McDonnell Douglas*, 411 U.S. 792 at 802. Then, in order to prevail, the plaintiff must prove that the reason(s) given by the employer are in fact a pretext for

---

[3] In their memorandum, Defendants address what they perceive to be Harp's attempt to bring a failure to promote claim. The Court finds that Harp's initial and amended complaint make clear that her sole claim is for wrongful termination. ECF No. 1 and 25. However, to the extent it is relevant, the Court will consider evidence of failure to promote in its wrongful termination analysis.

unlawful discrimination. *Id.*; *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003).

      **C.**      **Harp has not established a prima facie case of discrimination.**

The parties agree that Harp meets the first and second criteria of a prima facie case (*i.e.* that Harp is African American and was fired). However, Defendants argue she has not met her burden of showing, by a preponderance of the evidence, the third and fourth criteria (*i.e.* that she was qualified for her position and that the circumstances of her termination give rise to an inference of discrimination). The Court finds that although Harp was qualified for her job, the circumstances of her termination do not give rise to an inference of discrimination. Thus, Harp has not established a prima facie case of discrimination.

      **1.**      **Harp was qualified for her position.**

Harp argues that she was qualified for her position, as evident from "consistently positive" performance reviews over the course of her eight-year tenure at Navarre. ECF No. 1 ¶ 10. Defendants argue that Harp's failure to attend work on August 2 is evidence of her inability to meet Navarre's legitimate expectations as a supervisor, and therefore she was no longer qualified for her position. ECF No. 56, 17.[4]

---

[4] Defendants argue that Harp must show she was both qualified *and* meeting the legitimate expectations of her employer at the time she was terminated. ECF No. 56, 17, citing *Miller v. Citizens Sec. Group, Inc.*, 116 F.3d 343, 346 (8th Cir. 1997). However, requiring plaintiffs to show that they were performing satisfactorily rather than simply qualified for their position "raise[s] the standard set by the Supreme Court for what suffices to show qualification." *Arnold v. Nursing & Rehab. Ctr. at Good Shepherd, LLC.*, 471 F.3d 843, 846 (8th Cir. 2006)(quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2nd Cir. 2001)). Defendants primary argument also fails because, at this stage of the analysis, the Court does not consider the reasons proffered by the employer for the plaintiff's termination in deciding whether or not the plaintiff was qualified. *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010).

The Court agrees with Harp. Her largely satisfactory performance reviews during her eight years with Navarre, including various raises, demonstrate that she was qualified for her job. Harp Sec. Decl. 6-31, ECF No. 66; *See Neal v. Eniva Corp.*, 2005 U.S. Dist. LEXIS 15462 *18 (D. Minn. July 28, 2005) (holding that positive performance reviews and raises were enough to meet prima facie burden of qualification), *aff'd*, 197 Fed.Appx. 520 (8th Cir. 2006);*see also Riley v. Lance, Inc.*, 518 F.3d 996, 1000 (8th Cir. 2008) ("Since [plaintiff] had been performing [his job] successfully for years, he met [the third] requirement of the prima facie case.") (internal citation omitted).

### 2. The circumstances of Harp's termination do not give rise to an inference of discrimination.

To establish that the circumstances of ones termination gives rise to an inference of discrimination, a plaintiff must produce facts that similarly-situated employees who are not a member of the plaintiff's protected class received alternative treatment. *See Rodgers v. U.S. Bank, NA*, 417 F.3d 845, 850-852 (8th Cir. 2005), *abrogated in part on other grounds by Amini v. City of Minneapolis*, 643 F.3d 1068, 1076 (8th Cir. 2011). Harp has not produced evidence that would allow this Court to make such a finding. Notably, no other Navarre employee of any race missed work on the designated mandatory workday. ECF No. 56, 18.

Because Harp has not met her burden of showing the circumstances of her termination support an inference of discrimination, she fails to establish a prima facie case. *See Burns v. Hy-Vee, Inc.,* 2003U.S. Dist. LEXIS 9518 *11, (D. Minn. May 23, 2003).

### D. Even if Harp were able to establish a prima facie case of discrimination, she is unable to rebut Navarre's legitimate, nondiscriminatory reason for her termination.

Navarre maintains that Harp was fired because she failed to comply with the company's no-call/no show policy on a mandatory work day. Although the record is not clear as to how employees

were informed about the mandatory work period, Harp acknowledged in her deposition that she was aware of the overtime requirement during the Go-Live period. Harp Depo. 88-91, ECF No. 57, 7-8. When asked if she would have granted leave to any of her subordinates during the Go-Live period, she answered "I probably would have said no, you can't take that time off." Harp Depo. 96 at 10-15. Despite being aware of how important it was for all employees to be present for the Go-Live period, Harp maintains that she did not violate company policy for taking the time off because her leave request was granted by her supervisor. Harp Depo. 94-97.

However, it appears that Harp did not follow company policy in requesting August 1 and 2 off.[5] There is no evidence in the record reflecting a formal request made by Harp, nor is there any evidence that her request—if made—was granted. As such, Harp has produced no evidence that adequately rebuts Navarre's legitimate, nondiscriminatory justification for her termination.[6] Because Harp has not established a prima facie case nor—even if a prima facie case could be construed—offered any evidence of pretext based on intentional racial discrimination, the Court concludes that there are no genuine issues of material fact that must be heard by a jury.[7]

---

[5] According to the Navarre Supervision Guidebook, "All employees should utilize Navarre's company intranet, Inside Navarre, to request pre-approval for time off using the Time Off Request page." At the hearing, Defendants acknowledged that in practice most employees request time-off by e-mail and any leave granted is later updated in the Inside Navarre system. Here, no formal request was made through the computer system, and there are no e-mails reflecting Harp's request for time off. *See* Aff. McManus, Ex. E, ECF No. 59, 9.

[6] Although the circumstances of Harp's termination—after eight years of service—strike the Court as peculiar, it is not for the Court to decide if an employer's decision to terminate an employee is correct. *Lee v. K Mart Corp.*, 836 F.Supp. 2d 841, 857 (D. Minn. 2011); *also see McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir. 1995) ("[A]n employer has the right to . . . discharge—for good reason, bad reason, or no reason at all, absent intentional . . . discrimination.") (internal quotation marks omitted).

[7] Defendants note in their reply brief and also emphasized at the hearing that Harp has in her possession numerous documents that she did not disclose during discovery, some of which

## III. RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion for Summary Judgment (ECF No. 54) be **GRANTED**;

2. **JUDGMENT BE ENTERED ACCORDINGLY.**


DATED: January 28, 2013               *s/ Franklin L. Noel*
                                      FRANKLIN L. NOEL
                                      United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 12, 2013**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **February 12, 2013,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.

---

are considered confidential performance reviews of Navarre employees not party to this suit. If return of those documents is still desired, Defendants should file a motion for return of property.